(Decided 8th February, 1889.)

HENRY TEMMICK *vs.* JOHN H. OWINGS, Clerk of the Circuit Court for Howard County.

*Act of* 1882, *ch.* 450—*Act of* 1888, *ch.* 402—*Sale of Intoxicating liquors—Repeal—Local option—License to Sell intoxicating Liquors—Statutory construction—Sec.* 28 *of Art.* 3 *of the Constitution.*

By the Act of 1882, ch. 450, authority was given to the qualified voters of Howard County, to determine by ballot whether intoxicating liquors should be sold in said county. By the vote thus authorized and taken, the sale of intoxicating liquors was prohibited in the second election district of said county. By the Act of 1888, ch. 402, the Act of 1882, ch. 450, was repealed so far as said Act applied to the said second election district, and authority was given to the voters of said district again to determine by ballot, whether intoxicating liquors should be sold within the limits of said district; the repealing Act providing that if a majority of the votes cast be for the sale of intoxicating liquors, then licenses may be issued and liquor sold in said district, but if a majority of the votes cast be "against the sale of intoxicating liquors," no liquors should be sold in said district, and the Act of 1882, ch. 450, "shall apply therein as heretofore." The result of the vote in said district, taken under the Act of 1888, ch. 402, was a tie. HELD:

1st. That no license to sell intoxicating liquors in said election district could legally be issued, a majority of the votes cast not being in favor of such sale.

2nd. That the concluding words in the fourth section of the Act of 1888, ch. 402, "and said Act shall apply therein as heretofore," should be construed as a recognition of the existing status of the district in reference to the sale of intoxicating liquors under the

Temmick *vs.* Owings.

Act of 1882, ch. 450, and not as an attempt to re-enact said Act of 1882, in violation of section 28, of Article 3 of the Constitution, that provides that, "no bill shall become a law unless it be passed in each House by a majority of the whole number of members elected," &c.

APPEAL from the Circuit Court for Howard County.

The case is stated in the opinion of the Court.

The cause was argued before MILLER, STONE, ROBINSON, IRVING, BRYAN, and McSHERRY, J.

*Edgar H. Gans,* and *William A. Hammond,* for the appellant.

*Joseph D. McGuire,* and *Henry E. Wotton,* for the appellee.

PER CURIAM.—In this case the appellant applied for a *mandamus* to compel the clerk of the Circuit Court for Howard County to issue to him a license authorizing him to sell spirituous and fermented liquors in the second election district of that county. The result of the vote in that district whether such liquors should be sold therein, taken under the Act of 1888, ch. 402, *was a tie,* three hundred and twenty-one votes being cast for, and the same number against such sale. Previous to this time the voters of this district as well as of all the other districts of the county, had adopted the local option Act of 1882, ch. 450, which prohibited such sale. The Court below refused the *mandamus,* and we affirm that judgment for the reasons stated in the following opinion of Judge JONES of the Circuit Court, delivered upon passing the order appealed from:

"Whether the writ of *mandamus* applied for in this case shall issue or not depends on the effect to be given

to chapter 402 of the Acts of 1888, and to determine this, the plain and only duty of the Court is to ascertain and declare the legislative will as manifested in the statute in question.    To discover what this will is, the whole of the statute must be read together, every part of it in the light of all the other parts, and as the petitioner's case rests entirely upon the effect to be given to the repealing clause of the statute now under consideration, it may here be said that if on the entire face of the repealing Act *its* intent is plainly less broad than particular words in it, such intent will prevail in the construction.    And in all respects a repealing clause, like any other, will be rendered by the Court in the sense evidently meant by the repealing power.    *Bishop on Statutory Crimes, sec.* 151.

"Now, the repealing clause of this Act is not in terms a simple and absolute repeal of the Act of 1882, ch. 450, but its language is 'be and the same is hereby repealed as far as said Act applies to the second election district of said County, and *re-enacted* and *amended* so as to read as follows.'    It is therefore manifest upon the face of the repealing clause itself, that it was not in the mind of the Legislature to totally obliterate and destroy the whole operative effect of the Act of 1882, but rather to effect some modification of it. What was this modification?    The plain reading of subsequent sections, in the light of the history and policy of the legislation of which it is a part, makes it apparent that the amendment of the Act of 1882 was intended to extend only so far as to enable the voters of the designated locality to decide whether the then existing statute or policy in reference to the sale of spirituous, fermented, or intoxicating liquors should in their district be changed.    The statute now being construed is a piece of what is known as 'Local Option' legislation.    The principle upon which this legislation pro-

ceeds is that the operation of any particular Act is made subject to popular approval in the locality to be affected by it. Prior to 1882 the policy prevailed in the second election district of Howard County of allowing the sale of liquor therein, under the regulations and provisions of the general license system of the State. By the Act of Assembly of that year the question was submitted to the people of the district, whether that policy should be changed, and the opposite policy of prohibiting altogether the sale of liquor in the district be adopted in its stead. The question was determined in the affirmative by the popular vote, and from that time to 1888 the latter policy has prevailed in the district named. In the meantime the Legislature had been called upon to re-submit in several instances (notably by the Acts of 1884, ch. 283, 1886, chs. 382 and 383, and 1888, ch. 292,) the question whether liquor should be sold in localities where the popular vote on a previous submission had resulted in prohibiting the sale, and in each of the instances it was provided that the then existing statute should remain as it was, unless it was determined by the popular vote that it should be changed, thus adhering always to the principle governing the legislation upon this subject, that a prevailing policy was only to be changed by an affirmative result to that effect upon the popular vote. It is not therefore to be presumed that in enacting this Act of 1888 the Legislature intended to ignore the principle, history and policy of its legislation on this particular subject, and to conclude that this has been done we ought to find it made very plain by the language and terms of the law. So far from this appearing from the language and terms of this law taken as a whole, it seems to be quite clear that the view of the effect of the law urged by the petitioner finds no support from such reading of it. The repealing clause has already been

referred to. After this clause follow sections two and three providing the time and mode of taking, counting and returning the vote, and proclaiming the result. Then follows section four, the important part of the law as to the question being considered, from a reading of which the intent of the Legislature seems plain. This section reads 'that if a majority of the votes cast in said district be for the sale of intoxicating liquors then license may be issued and liquors may be sold in said district as provided by the general laws of this State, but if a majority of the votes cast be against the sale of intoxicating liquors, then no liquors shall be sold in said district and said Act (of 1882) shall apply therein as heretefore.' Now the condition here prescribed for a revival of the license system in the election district mentioned in the law, is 'that there shall be a majority of the votes cast, for the sale of intoxicating liquors;' if a majority of the votes be so cast then licenses 'may be issued' says the law. Suppose the law had stopped here, could there then have been any doubt about its meaning? Would it not have been plain that its object was to afford the voters an opportunity of ascertaining whether a majority were in favor of reviving the license system, and that it could only be revived in case there appeared to be a majority for it? Practically the case stands as if the law had stopped with prescribing the condition of a majority for sale, for at the election there was a tie vote, and the answer therefore to the petitioner's application is now just what it would have been in the case supposed, that is, that the condition upon which licenses were authorized to be issued did not transpire. It may here be remarked that the effect to be given to a tie vote received legislative construction in one of the Acts already referred to (Act of 1886, ch. 383, sec. 3.) It is not perceived that what

Temmick *vs.* Owings.

follows in the fourth section can help the petitioner's case.   It is true that a condition of a majority of votes against the sale of liquors did not happen;. but there is nothing in the law to show that the condition upon which licenses were authorized to be issued, was thereby to be dispensed with; still less was the last named con-.dition thereby gratified.

"As to the concluding words of the fourth section, 'and said Act shall apply therein as heretofore,' it was argued on behalf of the petitioner that they were nugatory, because of attempting to re-enact the Act of 1882 in violation of *Art.* 3, *sec.* 28, of the Constitution. But this would be a reason for not construing the Act of 1888 as an attempt on the part of the Legislature to repeal the Act of 1882 by its first section, and to re-enact it by the language of its fourth section; for it is not to be presumed that the Legislature intended to do an unconstitutional and void thing; and any construction that would lead to such a .conclusion ought to be avoided if possible.   But these words are to be given some meaning, and to be intended to be used for some purpose.   This can only be done by treating the law in which they occur as simply a submission to the voters of the designated locality, of the question whether the *status* upon the question of policy involved, existing at the time of the adoption of the law, should be changed.   In this view, their meaning becomes obvious, and their use altogether appropriate. Another consideration deserving of notice, in connection with this fourth section is, that in the corresponding provision in .the Act of 1882 it is first provided that if a majority of the votes cast are against the sale of intoxicating liquors, then it shall not be lawful to sell them; and then it is provided that if it shall be found that a majority is for the sale, then the same may be sold 'as now permitted.'   In this fourth

section the order is reversed as to these corresponding provisions. It is there first provided that if a majority be for the sale, then licenses may be issued under the general license laws of the State, but if a majority be against the sale, then no liquor shall be sold, and the Act of 1882 shall be in force in the district as heretofore. Thus both Acts recognize the existing *status*, and both alike make an affirmative result in the popular vote necessary to change it. In the Act of 1882 the *status* is recognized as that existing under the general license system, while in this fourth section of the Act of 1888 it is recognized as that existing under the Act of 1882.

"It only remains to notice the suggestion that section 5 of the Act of 1888 (which provides that it shall take effect from the date of its passage) is entitled to weight when taken in connection with the first section. But this fifth section would seem to have no special significance. Both the laws passed in 1886, before referred to, conclude with the same provision, and yet it is perfectly clear that neither of them was to take effect as a repeal of the Local Option laws then in force in the locality to which they applied, except in the event of its approval by a majority of the votes to be cast at the election provided for in the Act. The application for the *mandamus* in this case must therefore be refused."

*Order affirmed.*

(Decided 8th February 1889.)